Good morning. May it please the court. This case involves the question of whether Claude Wei had a fair and just reason to withdraw his plea agreement prior to sentencing. Counsel, I have two questions for you that are on my mind. Why don't I just pop them at you? First one is, everybody who does criminal defense knows the difference between an adjustment and a departure. He had a deal that the U.S. attorney would not recommend a departure for the number of aliens. The U.S. attorney did not recommend a departure for the number of aliens. Wei didn't get a departure for the number of aliens. He got the adjustment. What's confusing? What's the problem with that? Well, even, Your Honor, by the implication of the question is whether or not the U.S. attorney breached the agreement. And we're not suggesting that they did. And so I want to be clear about that. Even the distinction Your Honor just raised, I'm not so sure it's that clear. And even when you talk about adjustment. I think it's right in the definitions. You're right up in Chapter 1 of the. Well, the question is even are we talking here in this case about a specific offense characteristic, which is actually what we're talking about. We're not talking about an adjustment at all. We're talking actually about a Chapter 2 alteration of the calculated guideline sentence as opposed to an enhancement under Chapter 3. I think in this court, I think among the defense bar, these terms are used interchangeably and they are quite confusing. Well, it's a 2L1.1B2. That's what you're talking about. It's a specific offense characteristic, sir. Your Honor. And that's where the 100 aliens or so was taken into account. That is correct, Judge Canby. And I think, Judge Kleinfeld, I think you make an excellent point. I think you're right that these terms are used interchangeably and that in the law there is a clear distinction between all of these terms. Unfortunately, how they're used often is a mush. And what we had here was you're right. The plea agreement does implicitly say the government can use the specific offense characteristic. And we'll get to why the way it's written then doesn't make sense for Mr. Way. But the first step is what did Claude Way think? Did he have reasons to think it and was his belief genuine, even if erroneous? Because when he entered the plea agreement... I don't know. The judge really didn't believe much on what he thought. It seemed to me the question was a little different. Once you're talking departures, all bets are off. It's Katie Barletour. You could have the statutory max. Nice thing about the guidelines is they hold the judge down. I don't think the first point you make, Judge Kleinfeld, I don't think that's necessarily true. I think Judge Selnick, he expressed something about pure fabrication. At that point, he was addressing Mr. Way's argument that the withdrawal of the plea or a specific enforcement of the agreement should be withdrawn. He was making the argument that the withdrawal of the plea should be based on the fact that he was coerced or he felt pressure by his co-defendant that this was some sort of a package deal. And Mr. Way, in the two years preceding this moment, had represented himself for the majority of time and had never raised this. Counsel, why is this relevant in light of Judge Selnick's footnote 7 that says he would have imposed the same with or without evidence of endangerment? Well, that would not affect his right to withdraw the plea, which is the main argument I would like to address today. Right. But as far as the sentencing... But he can get that because after Booker and the court says in a footnote 1 and in another proceeding that he acknowledges that the guidelines are only a starting point, carrying no presumptive force in this circuit, that he's free to impose anything he wants. Oh, but the argument that Mr. Way is making here is that had he known, ab initio, that the government was not relenting on this 100 aliens, he would have chosen, he had known he had to litigate more than the three he admitted to. Had he known that, he wanted to have a trial. But the client's got a little bit of a track here. First of all, you told us that there was no brief. So the government hasn't done anything wrong. That means that this is between Mr. Way and the district court. He doesn't have an agreement with the district court, and all that the government has done is make a recommendation. But at that point, the district court didn't violate the statute by sentencing him in excess of the statutory amount. And we're not arguing that, Your Honor. Mr. Way gave up constitutionally enshrined rights, and he gave it up based on an understanding he had about how the government would be restricted. He was mistaken in that understanding, but he had good basis for it, both in the one, how the plea negotiations had occurred, two, the language of the plea agreement. And he said, if I can't have the agreement I thought I entered, I would like a jury trial. As far as I can tell, he got the agreement. The government didn't do anything in violation of the agreement. He just got a harsher sentence than he hoped to get, and he says, I want out. He understood there was limitations of what the government could argue at sentencing. He was incorrect in those, but they are genuine, they're accurate, and they're reflected by the record. Did he make his motion to withdraw before the sentence? He did, Your Honor. So the sentence didn't stimulate the motion? No, he did it ahead of time, and he had started this conversation with Judge Selma in April of 2005, saying, this is my understanding, and if you're going to tell me, Judge, that the government can argue for more than 100, and I have to defend against this, then I'm going to make a motion to withdraw my plea. And the judge said, you can make that motion at any time. And he made that motion. He had a fair and just reason. And I think at this point in time, Judge Selma was frustrated, and he was tired, and he didn't address that issue. He focused on a different issue. What's the just reason? Let me tell you what's on my mind. It looks like he has a deal, the government won't recommend a departure, it doesn't. I'm inclined to think the judge was wrong in giving him the two-level adjustment for endangering the aliens. I mean, he wasn't cooped up without food and phone longer than a lot of us have been in all kinds of circumstances. Sleeping in an office happens to other people, too. It does. I couldn't see the adjustment. But with that footnote where the judge says I would have done the same thing without the adjustment, I don't understand. Why withdraw the plea? What's the problem? If he had to litigate, and I'll answer your question. I would like to reserve my time if I may, Your Honor. I think to Mr. Way, he gave up his valuable trial rights on an understanding that was ultimately proven incorrect. What was the understanding? That if he pled guilty to only three aliens, and that his sentence would be determined by only three aliens, and that the limitation on the court and the limitation on the government would be in effect. And because he agreed to that, and he agreed to that factual basis, and the plea agreement was fairly adamant about this focus on three and only three aliens, when he lost that and it was determined he was incorrect, he said... Oh, so he thought he'd get a three alien, no adjustment for endangerment, no adjustment for more aliens. Correct. That was his understanding, and when he was told he couldn't have that understanding, when he was told he was incorrect, he said, then I want to have a trial. I reserve the rest of my time, Your Honor. Thank you, Counsel. Thank you. Counsel. Good morning. May it please the Court, Anne Gannon on behalf of the United States. Your Honors, the district court did not clearly err in making the credibility determination that the grounds for defendant's motion to withdraw were a fabrication and were designed for the purposes of the way. Did that apply to all the grounds? Did it apply to... Did the judge's comment about fabrication apply to his statement that he misunderstood whether a sentence would reflect 100 aliens or three? Your Honor, the district court did not make a line-by-line determination, but the defendant would like this Court to believe that it was limited to a specific issue. In fact, the record indicates that the district court said, ER 262, that the grounds for the motion was a pure fabrication. The government contends that when the district court made that comment, it was referring to all grounds raised in the motion, and that included defendant's claim that he did not understand the plea agreement he entered into with the government. What's interesting in the defendant's motion is that he actually enumerates certain claims and discusses them in detail. The claim that's currently before the Court was not one of those enumerated claims. It was only briefly mentioned in the introduction statement of facts. We used to have... I think it has a different letter now. When I was a district judge, we had an E1C where you could make a deal for a particular sentence, and if the judge said, I'm not going to give that sentence, then the defendant could withdraw. Is that still available? As I understand it, this was not that kind of plea bargain. That's correct, Your Honor. It was not that kind of plea agreement. That plea is still available. It's now called a C1C plea and is common in the fast-track immigration context but was not offered in this case. It was not that type of plea agreement. The defendant found himself in perhaps an unfortunate situation of pleading guilty just prior to the Blakeley decision, having his sentencing delayed while sentencing procedures were being determined post-Blakeley and pre-Booker. And, Your Honor, I believe that's where defendant's confusion arose from. He believed he was going to receive a benefit and only be sentenced to three aliens based on those decisions, not based on his plea agreement. And I believe that's why the district court, after extensive litigation in this case, the district court was incredibly patient with this pro se defendant. The record reveals that. Numerous motions, interlocutory appeals. He let this defendant have his day in court and litigate all of his issues. This was not a rash credibility determination. This district court had viewed this defendant's claims and demeanor for over two years and found that his claim that he did not understand his plea agreement was not credible and not supported by the defendant's own statements. This defendant states earlier in April of 05 that his primary concern was the sentencing procedures and the preponderance of the evidence standard. Are you saying that when he pleaded guilty, he had a reasonable belief based on Blakeley that if the government wanted to prove endangerment or more than three aliens, it would have to indict him for it and prove it beyond a reasonable doubt to a jury? He actually pled guilty just prior to Blakeley, so he did not have that expectation. So he pled before Blakeley could have created that? Correct. But shortly after he pled, perhaps that expectation was created and there was litigation before the district court about whether the number of aliens would be limited or if there would need to be a supplemental jury trial on that basis. Well, if he pleaded before Blakeley, though, then he couldn't be depending on Blakeley. I'm perhaps not understanding the court's question about if he pled prior to Blakeley, the sentencing issue was left open, and if the district court had been conservative and required the government to plead and prove any enhancements beyond a reasonable doubt to a jury, that was still an option. The government contended that was still open to the district court and the defendant felt should be applied because it gave him a benefit on a heightened standard for any sentencing enhancements. His motion to withdraw, of course, came after Blakeley. Was it implicit or explicit in his motion? I understand your point that he's arguing that Blakeley applies and requires a different standard. Was it explicit or implicit in his motion that he understood that the sentence characteristics would include more than three aliens? I think in the introduction and the statement of facts, it's explicit. I mean, he does raise the claim, but he never developed it. And this was, once again, over two years after he pled guilty and after he filed numerous other motions seeking to have a beyond-a-reasonable-doubt standard, that this jury trial potential proceeding would not occur. And at that time, the district court ruled on the motion as a whole and found that the defendant's claims lacked credibility. This is not an issue, Your Honor, where the question of whether the defendant could have been confused. The question is whether he was confused. And the fact that he did not raise this claim earlier on undermines his credibility. Do I understand your argument to be that whatever expectation he might have had that he would get sentenced based on three aliens only, no endangerment, arose not from the plea bargain and not from the case law at the time that he changed his plea to guilty, but rather from a subsequent Supreme Court decision, Blakely? Yes, Your Honor. I believe that's where this was all coming from. I think that's where the defendant's expectation changed, and I think that's what the record supports. In fact, the defendant even makes a comment in one of his pleadings or at one of the hearings, cited in the government's brief, where he says, for the first few months it was normal, I went back to Santa Ana Jail, everybody's sentence gets increased, that's normal, and then Blakely. Well, let me ask you something about the adjustment. I just couldn't see it. I mean, people sleep in their offices when they're having a fight with their landlord, when they're having a fight with their spouse, when they're just super busy. They have cots at Cravath in New York. And as far as being away from the phone, I'm away from my cell phone half the time in Alaska because I'm out of the footprint. What's the big deal on that? Your Honor, I think the important distinguishing factor in the record in this case is the aliens weren't unable to extricate themselves from that. For how long? Your Honor, the record's not clear. I didn't see anything in the record showing how long. That's correct, Your Honor, but. . . I mean, I've been on a river trip for two days with nothing but a pack of Oreos. I would have liked to have more food, but it's not that big a deal. Your Honor, I think what the record does show is that there was evidence that Timothy McFall, who was responsible for the office, was a contractor and he was away for an extended period of time, and that he was concerned about the food for the aliens, and so he provided. . . It seems so. . . It's not like when they lock them in trailers in the desert, though. Your Honor. . . Were they locked in? Yes, Your Honor. Was it locked from the outside? Yes, Your Honor. And there was no safety bar? There was no way for them to get out? Could they break a window to get out? Your Honor, the record's silent with regard to whether there were windows. What was in the record is that they were in a locked office space with no telephone, limited food. I think this case is analogous, minus any weather considerations, to being locked in a trailer. Do you know whether Cravath is locking its associates in these days? Sorry, Your Honor? I wondered if you knew whether Cravath was locking its associates in these days. Your Honor, I have to confess that I've been fortunate enough to never work for a law firm, so I'm not quite sure. But, you know, regardless of the record, what the district court did provide was that the sentence would have been the same even without this enhancement. I think that footnote is crucially important. And because of the exploitative nature of this offense, the district court found that the 63-month sentence would have been appropriate under the 3553A. Was this office someplace dangerous? I mean, most offices, they don't burn down. Nothing happens. It's the same every day for 30 years. Your Honor, I can tell you the office was in Orange County. It was in a residential commercial development. But, you know, the record is limited in terms of the facts. But I think that this ---- I was thinking you would develop the facts to show that it's like a trailer in the desert can go to 140 degrees or something like that. Your Honor, it's not that type of situation. But I think where this court has drawn the distinction in the past between the Dixon and Torres Flores cases and the other cases where it's upheld the enhancement, is this ability for defendants to free ---- I'm sorry, for the aliens to free themselves. Did the pre-sentence report recommend that enhancement? Yes, Your Honor. And the court issued a tentative ruling saying that it was inclined to grant the enhancement. So the defendant was certainly noticed that this issue was there. And the district court, once again, felt it was appropriate, but also said that it would have reached the same conclusion even if the sentence had not been imposed. The government contends that the district court did not err with regard to any of the three issues raised by the defendant, and I would submit on the briefs. Thank you, counsel. Rebuttal. I just want to start by briefly letting the court know that one of the transcripts we cite repeatedly in our brief we did not include in our excerpts of record. It had come at the last moment, and we were supposed to have a supplemental excerpt, and we neglected to do that. I will leave a copy of the April 29th hearing with the clerk of the court if that's all right. Any objection to just stating that? No, Your Honor. Thank you. Thank you, Your Honor. I think what I'd like to start with in the few moments I have left is I disagree with the government's contention that the judge's credibility finding was aimed at the motion to withdraw based on the misunderstanding. We also disagree that Mr. Way did not raise this issue early. We, again, cited this brief. He repeatedly said that from the plea negotiations, his understanding was that he would only be sentenced for three aliens. If his motion to withdraw is based on the fact that it violates Blakely, Booker, et cetera, to hold him for more than three aliens without going through proper standards and jury findings, doesn't that imply that he knows otherwise that he will be charged with more than three? If that was his motion, I think the court's reasoning would hold a lot of weight. That was not what he said. He said since August, actually from June when he first became his own lawyer, he always said the plea agreement said three and only three. This was the reason I pled guilty. This was my inducement. I only pled guilty for that reason, but for that reason, I would not have pled guilty. He said this in four, five, six court hearings. They are cited repeatedly. He was consistent in voicing the fact that when the original plea agreement stopped, including the enhancement for more than the three aliens, he understood that he had prevailed in negotiations. The nuanced distinction between an enhancement, an adjustment, and a departure was lost upon him, and from the beginning when it was unmasked by the government and the government was consistent in saying no, we can do this, he consistently said no, no, no, Your Honor, they can't, they can't, they can't, and he said it loudly for more than a year. When the judge finally said, well, I'm denying your motion. I'm going to sentence you and have this hearing on more than three, he said, I file a written motion. I want to withdraw my plea. I want a jury trial. I do not want to do this, and he did not base that on Blakely. He did not base that on Booker. He based it on his understanding of what restrictions he had bargained for and that he was incorrect and never affected his sincerity of his belief or his honesty, and when the judge addressed his motion, he did not address that issue. Did he have a lawyer at the time that he filed his change of plea and entered into the plea bargain? He did, Your Honor. That lawyer was fired shortly thereafter. He got a new lawyer. That lawyer had a conflict of interest, and he said when the conflict of interest came up, he said, Judge, I don't want to have a new lawyer. I don't want to be delayed. I will represent myself throughout the rest of the proceedings. The waiver was proper. It was handled appropriately, but that sort of affected what happened thereafter, but that was his consistent belief, and it was a fair and just reason that the judge didn't consider under Ortega-Escanio. At the time he entered his plea, he had a lawyer who could explain to him. He did, Your Honor. Absolutely. Thank you. Thank you, Your Honor. U.S. v. Way is submitted. Ward v. Giorvino is submitted. We'll hear Nelson v. Schwartz.
judges: Canby, Kleinfeld, Bybee